# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JUAN IVAN RODRIGUEZ,

      Petitioner,

v.                                                            Case No. 8:16-cv-2992-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

## ORDER

    Juan Ivan Rodriguez filed a timely[1] petition for habeas relief under 28 U.S.C. § 2254

challenging his state convictions for manslaughter while driving under the influence and

reckless driving. (Docs. 1 and 2.) Having considered the petition (*id.*), the response in

opposition (Doc. 21), and the reply (Doc. 25), the Court denies the petition. Furthermore,

a certificate of appealability is not warranted.

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* 28 U.S.C. § 2244(d)(1). This one-year limitation is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* 28 U.S.C. § 2244(d)(2). Rodriguez's convictions and sentences were affirmed on October 25, 2006. (Doc. 24-1 at 85.) His judgment became final 90 days later, on January 24, 2007, when the time to petition the Supreme Court of the United States for writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 63 days of untolled time passed, on March 29, 2007, Rodriguez filed a motion for postconviction relief. (Doc. 24-1 at 89–95.) The one-year limitation remained tolled until the mandate issued on postconviction appeal on January 28, 2016. (Doc. 24-1 at 372.) Rodriguez had until November 28, 2016, to file a timely federal habeas petition. Less than one year of untolled time had expired when Rodriguez filed his § 2254 petition on October 24, 2016. The petition is therefore timely.

# I. BACKGROUND

## A. Procedural History

A state court jury convicted Rodriguez of five counts of manslaughter while driving under the influence and five counts of reckless driving. (Doc. 24-1 at 6–8.) The trial court sentenced Rodriguez to five consecutive terms of life in prison for the manslaughter convictions. (Doc. 24-1 at 13–16.)[2] The state appellate court per curiam affirmed Rodriguez's convictions and sentences. (Doc. 24-1 at 85.)

Rodriguez filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 24-1 at 89–95.) The state postconviction court summarily denied the motion. (Doc. 24-1 at 160–62.) The state appellate court affirmed-in-part and reversed-in-part the order denying the motion and remanded for further review. (Doc. 24-1 at 166–67.)

On remand, the state postconviction court dismissed the motion as facially deficient with leave to file an amended motion. (Doc. 24-1 at 171–73.) Rodriguez filed an amended motion, (Doc. 24-1 at 175–85), which the state postconviction court struck-in-part, (Doc. 24-1 at 187–89). The state postconviction court granted an evidentiary hearing on two claims in the amended motion, (Doc. 24-1 at 191–92), and denied Rodriguez's motion to

---

[2] At sentencing, the trial court determined that the five misdemeanor counts for reckless driving merged into one count. (Doc. 24-4 at 79.) *See Hosford v. State*, 682 So. 2d 218 (Fla. 5th DCA 1996). The trial court declined to impose a sentence on the merged count. (Doc. 24-4 at 79.)

further amend the motion with additional claims, (Doc. 24-1 at 333). At the evidentiary hearing, Rodriguez did not present evidence to prove his claims, (Doc. 24-4 at 97), the state postconviction court denied the amended motion for postconviction relief, (Doc. 24-1 at 335), and the state appellate court affirmed, (Doc. 24-1 at 370).  Rodriguez's federal petition followed.

### B.  Factual Background and Trial Testimony[3]

On the evening of February 14, 2005, Rodriguez drove south on Highway 17 toward Avenue D in Winter Haven, Florida, in a black Acura. (Doc. 24-2 at 409–14.) Michael White also drove south on Highway 17 toward Avenue D in a red Dodge Neon. (Doc. 24-2 at 411–14.) Raul Perez drove north on Highway 17 in a white Oldsmobile and prepared to turn left. (Doc. 24-2 at 414–16.) Witnesses saw Rodriguez's Acura and White's Neon racing down the street, traveling at high speeds and swerving around cars. (Docs. 24-2 at 342–43, 373–74, 446–49, 559–60, 570–72, 589–90, 608–12 and 24-3 at 194–96.)

An accident reconstruction expert testified on behalf of the prosecution and opined that a crash occurred as follows. Rodriguez in the Acura and White in the Neon exceeded the speed limit when they entered the intersection at Avenue D, and Perez in the Oldsmobile turned left and collided into White's Neon. (Doc. 24-3 at 15–25, 83–89.) Perez caused the Neon to suddenly slow down, which led Rodriguez, who was behind the

---

[3] The factual background is derived from the trial transcript.

Neon, to rear-end and propel the Neon into transformer box. (Doc. 24-3 at 15–25, 83–89.)

A medical examiner testified that White and four passengers in the Neon died from blunt force trauma before the car burst into flames. (Doc. 24-2 at 548–52.) Perez in the Oldsmobile and a passenger in Rodriguez's Acura suffered serious injuries. (Doc. 24-2 at 529–32.)

That evening, Rodriguez and his friends drank beer and played billiards for two or three hours. (Doc. 24-2 at 362–65.) A toxicologist opined that Rodriguez's blood alcohol content was 0.09 or 0.10 at the time of the crash. (Doc. 24-3 at 216, 221.) White and his friends drank alcohol and smoked marijuana at a motel. (Doc. 24-2 at 566–68, 577, 597, 607–08.) White's blood alcohol content was 0.12 at the time of his death, and a blood test showed that he had consumed a therapeutic amount of Xanax. (Doc. 24-2 at 549.) Perez had a blood alcohol content of 0.12 or 0.13 at the time of the crash. (Doc. 24-3 at 61–62, 224–25.)

The prosecutor charged both Rodriguez and Perez with the homicides, and both defendants were jointly tried. A witness who was driving on Highway 17 observed Rodriguez's Acura collide into the Neon only after the Neon collided into the Oldsmobile. (Doc. 24-2 at 343–49.) Rodriguez's friend, who was stopped at a traffic light two blocks from the crash, observed the Oldsmobile turn left in front of Rodriguez's Acura and the

4

Neon. (Doc. 24-2 at 377–79.) A truck driver, who was approaching the intersection, observed Rodriguez's Acura rear-end the Neon when the Neon slowed down to turn right, propelling the Neon into the Oldsmobile. (Doc. 24-2 at 413–22.) An accident reconstruction expert who testified on behalf of Perez opined that Rodriguez rear-ended White's Neon first and caused the Neon to collide into Perez's Oldsmobile. (Doc. 24-3 at 329–51, 359–60, 366.)

In a recorded interview, Rodriguez told a detective that the Neon side-swiped his Acura while racing past him and then cut him off by swerving into his lane. (Doc. 24-3 at 112–17.) In a second recorded interview, Rodriguez told a detective that the driver in the Neon twice drove next to him, revved the engine, and sped off. (Doc. 24-3 at 139–42.) He claimed that he and the Neon were about to cross the street, the Neon cut across into his lane, and the Neon went under his front bumper. (Doc. 24-3 at 141–67.) He claimed that the Neon "crunched up" before he hit the Neon. (Doc. 24-3 at 149–52.) He admitted that he drank two beers that evening and exceeded the speed limit but denied that he raced the Neon. (Doc. 24-3 at 144–47.)

Rodriguez testified in his own defense. Rodriguez testified that he and his friends drank beer and played billiards that evening at a sports bar. (Doc. 24-3 at 266–67.) Rodriguez claimed that he drank two and a half mugs of beer during the three hours that the group spent at the bar. (Doc. 24-3 at 267, 293.) The group planned to go to a dance

club. (Doc. 24-3 at 268.) While Rodriguez was driving on Highway 17, a driver in a red Neon twice drove next to him, revved the engine, and sped off. (Doc. 24-3 at 274.) Rodriguez continued to drive in the lane closest to the sidewalk, the driver of the red Neon drove in the lane closest to the median about a car-length ahead of Rodriguez, and something pulled in front of the red Neon, which caused the driver of the red Neon to break hard and come into the lane where Rodriguez was traveling. (Doc. 24-3 at 275.) After observing the red Neon "folding up" and veering into his lane, Rodriguez slammed on his breaks, started sliding, and observed his bumper lodge beneath the red Neon. (Doc. 24-3 at 275–77.) Rodriguez's car shifted right and slammed into a sign at a McDonald's restaurant. (Doc. 24-3 at 277.)

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court

"should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner's factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an

'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must present his claims by raising them in state court before bringing them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the

result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Rodriguez brings claims for ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. ANALYSIS

### A. Ground One

Rodriguez asserts that counsel was ineffective for not retaining Rick Copley, an expert witness, who would testify that Perez caused the crash and Rodriguez did not

contribute to the cause of the crash. (Doc. 1 at 5–8.) The Respondent asserts that the claim is unexhausted and procedurally defaulted. (Doc. 21 at 12–14.)

Rodriguez presented the claim in a motion for postconviction relief, (Doc. 24-1 at 90–92); the state postconviction court denied the claim as facially insufficient, conclusory, and meritless, (Doc. 24-1 at 161); and the state appellate court reversed after determining that the records attached to the order denying the claim did not refute the claim, (Doc. 24-1 at 166–67). On remand, the state postconviction court dismissed the claim as facially insufficient with leave to amend. (Doc. 24-1 at 171–73.) Rodriguez presented the claim in an amended motion for postconviction relief, (Doc. 24-1 at 177–81), and the state postconviction court granted an evidentiary hearing on the claim, (Doc. 24-1 at 191–92).

Before the evidentiary hearing, Rodriguez moved to further amend the motion for postconviction relief to add new claims, (Doc. 24-1 at 194–98), and the state postconviction court denied the motion, (Doc. 24-1 at 333). At the evidentiary hearing, postconviction counsel advised that Rodriguez was not presenting testimony or evidence to prove his claim. (Doc. 24-4 at 96–98.) The state postconviction court denied the claim, (Doc. 24-1 at 335), and Rodriguez appealed, (Doc. 24-1 at 338). On appeal, Rodriguez asserted that the state postconviction court erred by denying his motion to further amend his motion for postconviction relief to add new claims. (Doc. 24-1 at 350–55.) He did not

present on appeal the ineffective assistance of counsel claim that he raises in Ground One of his federal petition.

Rodriguez failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. If he returns to state court to present the claim, the state postconviction court will deny the claim as untimely and successive. Fla. R. Crim. P. 3.850(b), (h). Consequently, the claim is procedurally defaulted in federal court. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998).

Rodriguez asserts that cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), excuse the procedural default. (Doc. 25 at 8–10.) But *Martinez* does not apply to a claim defaulted on state postconviction appeal. *See Lambrix v. Sec'y, Fla. Dep't Corrs.*, 756 F.3d 1246, 1260 (11th Cir. 2014) ("Importantly, the *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings: '[T]he holding in [*Martinez*] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.'" (quoting *Martinez*, 566 U.S. at 16)). Ground One warrants no relief.

## B. Ground Two

Rodriguez asserts that counsel was ineffective for not filing a motion for a change of venue because of pre-trial publicity. (Doc. 1 at 9–10.) The Respondent asserts that the claim is unexhausted because Rodriguez failed to present the federal nature of his claim to the state postconviction court. (Doc. 21 at 17–18.) In his state postconviction motion, Rodriguez raised the claim but did not cite *Strickland* or the Sixth Amendment. (Doc. 24-1 at 92.) Because *Strickland* applies to an ineffective assistance of counsel claim presented in a Florida court, Rodriguez fairly presented the federal claim. *Jackson v. State*, 347 So. 3d 292, 299 (Fla. 2022).

The state postconviction court denied the claim because the crash occurred in 2003 and the trial occurred in 2005. (Doc. 24-1 at 99.) Also, the state postconviction court determined that, during voir dire, the prosecutor individually questioned each potential juror about exposure to publicity. (Doc. 24-1 at 99.) The state postconviction court concluded that a motion to change the venue would not have succeeded because, although eighteen of the thirty-nine potential jurors knew about the case, only one juror stated that she could not decide the case impartially because her nephew knew the victims, and the remaining seventeen jurors stated that they could decide the case objectively. (Doc. 24-1 at 99.)

The state postconviction court did not unreasonably deny the claim. Whether a motion to change the venue would have succeeded is an issue of state law, and the state court's determination of state law receives deference in federal court. *Herring v. Sec'y, Dep't Corrs.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005). The state postconviction court accurately described the answers of the potential jurors to the prosecutor's questions during voir dire about exposure to publicity. (Doc. 24-2 at 19–74, 134–75, 218–52, 270–89.) The trial court dismissed the potential jurors who expressed bias because of exposure to publicity. (Docs. 24-2 at 69–71, 128, 218–20, 231, 252, 287, 289 and 24-3 at 530–31.)

"'[I]f prospective jurors can assure the court during voir dire that they are impartial despite their extrinsic knowledge, they are qualified to serve on the jury, and a change of venue is not necessary.'" *Gonzalez v. State*, 253 So. 3d 526, 529 (Fla. 2018) (quoting *Rolling v. State*, 695 So. 2d 278, 287 (Fla. 1997)). If a defendant asserts that trial counsel was ineffective for not moving for a change of venue, the defendant "'must, at a minimum, bring forth evidence demonstrating that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court.'" *Gonzalez*, 253 So. 3d at 529 (quoting *Carter v. State*, 175 So. 3d 761, 776 (Fla. 2015)). Because each juror who sat on the jury and learned about the crash from pre-trial publicity confirmed that he could impartially decide the case, and Rodriguez failed to

present evidence supporting a change of venue, the state postconviction court did not unreasonably deny the claim. Ground Two warrants no relief.

## C. Ground Three

Rodriguez asserts that counsel was ineffective for not soliciting a plea offer from the prosecutor. (Doc. 1 at 11–12.) He contends that "it is unknown if the [prosecutor] would have accepted a plea agreement to a term of fifteen or twenty years because counsel never asked the [prosecutor] for an offer." (Doc. 2 at 29.) The Respondent asserts that the claim is procedurally defaulted because Rodriguez failed to present the federal nature of his claim to the state postconviction court. (Doc. 21 at 24–25.) In his state postconviction motion, Rodriguez raised the claim but failed to cite *Strickland* or the Sixth Amendment. (Doc. 24-1 at 92.) Because *Strickland* applies to an ineffective assistance of counsel claim presented in a Florida court, Rodriguez fairly presented the federal claim. *Jackson*, 347 So. 3d at 299.

The state postconviction court denied the claim because Rodriguez merely speculated that the prosecutor would have extended an offer. (Doc. 24-1 at 161–62.) Because Rodriguez failed to support the claim with some evidence to demonstrate that the prosecutor would have extended an offer, the state postconviction court did not unreasonably deny the claim. *Osley v. United States*, 751 F.3d 1214, 1225 (11th Cir. 2014) ("To the extent Osley avers that the prosecutor would have then offered a new deal

amenable to him, and the district court would have accepted it, this claim is wholly speculative." (citing *Missouri v. Frye*, 566 U.S. 134, 147–49 (2012)). Ground Three warrants no relief.

### D. Ground Four

Rodriguez asserts that counsel was ineffective for not opposing the prosecutor's motion to consolidate his trial with Perez's trial. (Doc. 1 at 13–15.) The Respondent asserts that the claim is unexhausted and procedurally defaulted. (Doc. 21 at 29–30.)

Rodriguez presented the claim in a motion for postconviction relief, (Doc. 24-1 at 93); the state postconviction court denied the claim as facially insufficient and meritless, (Doc. 24-1 at 162); and the state appellate court reversed after determining that the records attached to the order denying the claim did not conclusively refute the claim, (Doc. 24-1 at 166–67). On remand, the state postconviction court dismissed the claim as facially insufficient with leave to amend. (Doc. 24-1 at 171–73.) Rodriguez presented the claim in an amended motion for postconviction relief, (Doc. 24-1 at 181–82), and the state postconviction court granted an evidentiary hearing on the claim, (Doc. 24-1 at 191–92).

Before the evidentiary hearing, Rodriguez moved to further amend the motion for postconviction relief to add new claims, (Doc. 24-1 at 194–98), and the state postconviction court denied the motion, (Doc. 24-1 at 333). At the evidentiary hearing, postconviction counsel advised that Rodriguez was not presenting testimony or evidence

to prove his claim. (Doc. 24-4 at 96–98.) The state postconviction court denied the claim, (Doc. 24-1 at 335), and Rodriguez appealed, (Doc. 24-1 at 338). On appeal, Rodriguez asserted that the state postconviction court erred by denying his motion to further amend his motion for postconviction relief to add new claims. (Doc. 24-1 at 350–55.) He did not present on appeal the ineffective assistance of counsel claim that he raises in Ground Four of his federal petition.

Rodriguez failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. If he returns to state court to present the claim, the state postconviction court will deny the claim as untimely and successive. Fla. R. Crim. P. 3.850(b), (h). Consequently, the claim is procedurally defaulted in federal court. *Snowden*, 135 F.3d at 736.

Rodriguez asserts that cause and prejudice under *Martinez* excuse the procedural default. (Doc. 25 at 15–18.) As stated earlier though, *Martinez* does not apply to a claim defaulted on state postconviction appeal. *Lambrix*, 756 F.3d at 1260 (citing *Martinez*, 566 U.S. at 16)). Ground Four warrants no relief.

### E. Ground Five

Rodriguez asserts that counsel was ineffective for not moving to recuse the sentencing judge for demonstrating bias, prejudice, and personal animus toward Rodriguez

and for not requesting a new sentencing before a different judge. (Doc. 1 at 16–17.) The Respondent asserts that the claim is unexhausted and procedurally defaulted. (Doc. 21 at 33–37.)

Rodriguez first presented the claim in an amended motion for postconviction relief, (Doc. 24-1 at 182–83), after the state appellate court reversed the order denying his initial motion for postconviction relief, (Doc. 24-1 at 166–67.) The state postconviction court "struck" the claim because an earlier order granting Rodriguez leave to file the amended motion did not grant Rodriguez leave to present the new claim, the claim was facially insufficient, and the claim was refuted by the record. (Doc. 24-1 at 188.) The state postconviction court granted an evidentiary hearing for two unrelated claims. (Doc. 24-1 at 191–92.)

Before the evidentiary hearing, Rodriguez moved to further amend the motion for postconviction relief to add new claims, (Doc. 24-1 at 194–98), and the state postconviction court denied the motion, (Doc. 24-1 at 333). At the evidentiary hearing, postconviction counsel advised that Rodriguez was not presenting testimony or evidence to support his other claims. (Doc. 24-4 at 96–98.) The state postconviction court denied the amended motion for postconviction relief, (Doc. 24-1 at 335), and Rodriguez appealed, (Doc. 24-1 at 338). On appeal, Rodriguez asserted that the state postconviction court erred by denying his motion to further amend his motion for postconviction relief to add the

new claims, (Doc. 24-1 at 350–55). He did not present on appeal the ineffective assistance of counsel claim that he raises in Ground Five of his federal petition.

Rodriguez failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. If he returns to state court to present the claim, the state postconviction court will deny the claim as untimely and successive. Fla. R. Crim. P. 3.850(b), (h). Consequently, the claim is procedurally defaulted in federal court. *Snowden*, 135 F.3d at 736. Rodriguez does not assert that cause and prejudice excuse the procedural default. (Docs. 1 at 16–17, 2 at 31, and 25 at 19.) Ground Five warrants no relief.

## F. Ground Six

Rodriguez asserts that counsel was ineffective for not moving to suppress evidence obtained from his blood drawn by a paramedic in an ambulance at the scene of the crash. (Doc. 1 at 18–20.) The Respondent asserts that the claim is procedurally defaulted because the state postconviction court dismissed the claim on an independent and adequate state ground. (Doc. 21 at 38–43.)

Rodriguez presented the claim in his motion to further amend the motion for postconviction relief. (Doc. 24-1 at 194–97.) The state postconviction court denied the motion to amend because the claim was untimely. (Doc. 24-1 at 333.) Rodriguez appealed,

(Doc. 24-1 at 338), and asserted that the state postconviction court erred by denying his motion to amend, (Doc. 24-1 at 350–55). The state appellate court per curiam affirmed without a written opinion. (Doc. 24-1 at 370.) This Court presumes that the state appellate court also determined that the claim was untimely. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Because the time limit imposed on a motion for postconviction relief is an independent and adequate state ground that bars federal review of a claim, the claim is procedurally defaulted in federal court. *Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir. 1990).

Rodriguez asserts that cause and prejudice under *Martinez* excuse the procedural default. (Doc. 25 at 19–22.) Rodriguez must demonstrate that his retained postconviction counsel was ineffective for not timely presenting the claim (cause) and that the claim has "some merit" (prejudice). *Martinez*, 566 U.S. at 14. Because Rodriguez fails to meet his heavy burden under § 2254(e)(2), the Court "may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022). Rodriguez must demonstrate deficient performance and prejudice under *Strickland* based on that limited record. *Id.*; *Strickland*, 466 U.S. at 687.

Rodriguez contends that a motion to suppress would have succeeded because police did not comply with § 316.1933(1)(a), Fla. Stat. (2003), and obtain a sample of his blood only after determining that a police officer had probable cause to believe that Rodriguez drove a vehicle under the influence of alcohol and caused the death or serious bodily injury of a person. (Doc. 2 at 31–34.) He contends that Officer Daniel Miller, who directed the paramedic to obtain the blood sample, did not testify that he either smelled alcohol when he spoke with Rodriguez or observed behavior that led him to reasonably believe that Rodriguez was under the influence of alcohol. (Docs. 1 at 18–19 and 2 at 32.) He also contends that the evidence at trial did not prove that he consented to the blood sample. (Doc. 1 at 18.)

Rodriguez conflates the burden under *Martinez* with the burden under § 316.1933 for a motion to suppress. Under *Martinez*, Rodriguez must demonstrate cause and prejudice. *Martinez*, 566 U.S. at 14. He must demonstrate—based on the limited state court record—that the motion to suppress would have succeeded. *See Shinn*, 142 S. Ct. at 1734. He cannot satisfy that burden by asserting that the absence of testimony or evidence at trial proves that the officer lacked probable cause or consent. The trial court never held a hearing to determine whether police lacked probable cause or consent.

Worse yet for proving prejudice here is that evidence at trial affirmatively proved consent by Rodriguez. At trial, Officer Miller testified, "Under our policies, in a crash

involving serious bodily injury or death, we automatically request a blood draw." (Doc. 24-2 at 499.) He further testified that he requested a blood sample from Rodriguez, (Doc. 24-2 at 499), and Rodriguez did not act defensively or ask why the detective wanted the sample. (Doc. 24-2 at 507.) Rodriguez testified that he consented to the blood sample:

> Um, it's hard to say, this was like two years ago. I don't know what [the officers] did first, but I do know that they did ask if they could take my blood. And I told them that's fine; I had no problem with that. They did ask me. They were asking me questions about the accident and how it happened and where I was coming from.

(Doc. 24-3 at 282.)

Because the state court record demonstrates that Rodriguez consented to the blood sample, a motion to suppress under § 316.1933 would not have succeeded. *See State v. Murray*, 51 So. 3d 593, 594–96 (Fla. 5th DCA 2011) (holding that the implied consent law under § 316.1933(1)(a) does not apply if a defendant consents to the blood sample) (citing *Schmerber v. California*, 384 U.S. 757, 771 (1966)). Consequently, Rodriguez fails to demonstrate that the *Strickland* claim has "some merit," and cause and prejudice under *Martinez* do not excuse the procedural default. Ground Six warrants no relief.

## G. Ground Seven

Rodriguez asserts that counsel was ineffective for not retaining H. Chip Walls, a forensic toxicologist, who would testify that Rodriguez's blood alcohol content at the time

of the crash was below 0.08. (Doc. 1 at 21–22.) The Respondent asserts that the claim is procedurally barred because the state postconviction court dismissed the claim on an independent and adequate state ground. (Doc. 21 at 43–44.)

Rodriguez presented the claim in his motion to further amend the motion for postconviction relief. (Doc. 24-1 at 197–98.) The state postconviction court denied the motion to amend because the claim was untimely. (Doc. 24-1 at 333.) Rodriguez appealed, (Doc. 24-1 at 338), and asserted that the state postconviction court erred by denying his motion to amend, (Doc. 24-1 at 350–55). The state appellate court per curiam affirmed without a written opinion. (Doc. 24-1 at 370.) This Court presumes that the state appellate court also determined that the claim was untimely. *Ylst*, 501 U.S. at 803. Because the time limit imposed on a motion for postconviction relief is an independent and adequate state ground that bars federal review of a claim, the claim is procedurally defaulted in federal court. *Whiddon*, 894 F.2d at 1267.

Rodriguez asserts that cause and prejudice under *Martinez* excuse the procedural default. (Doc. 25 at 22–27.) Rodriguez must demonstrate that his retained postconviction counsel was ineffective for not timely presenting the claim (cause) and that the claim has "some merit" (prejudice). *Martinez*, 566 U.S. at 14. Because Rodriguez fails to meet his heavy burden under § 2254(e)(2), the Court "may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance

of state postconviction counsel." *Shinn*, 142 S. Ct. at 1734. Rodriguez must demonstrate deficient performance and prejudice under *Strickland* based on that limited state court record. *Strickland*, 466 U.S. at 687.

"[*Strickland*'s prejudice] burden is particularly 'heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative.'" *McKiver v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)). "[F]or that reason, [the Eleventh Circuit has] held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *Id.*

Rodriguez failed to present to the state postconviction court an affidavit or testimony by a forensic toxicologist to demonstrate that the expert would testify in the manner that he contends. Rodriguez did not attach an affidavit or a transcript to his motion to amend, (Doc. 24-1 at 194–98), and did not proffer testimony by an expert witness at the hearing on the motion, (Doc. 24-4 at 83–92).

Because the limited state court record does not demonstrate that the *Strickland* claim has "some merit," cause and prejudice under *Martinez* do not excuse the procedural default. Ground Seven warrants no relief.

## H. Ground Eight

Rodriguez asserts that the state trial court violated his Sixth Amendment right to a jury trial by imposing a sentence that exceeded the statutory maximum based on facts not determined by the jury. (Doc. 1 at 23–24.)

The Respondent asserts that the claim is unexhausted because Rodriguez failed to present the claim to the trial court at sentencing. (Doc. 21 at 44–45.) Rodriguez presented the claim in his brief on direct appeal. (Doc. 24-1 at 55–57.) Because the State of Florida failed to assert that the claim was unpreserved for review on appeal, (Doc. 24-1 at 78–80), and because the state appellate court did not clearly and expressly state that its summary affirmance rested on a state procedural bar, (Doc. 24-1 at 85), this Court presumes that the state appellate court reviewed the merits of the claim. *Harris v. Reed*, 489 U.S. 255, 263 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."); *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) ("In light of *Harris*, application of [ ] imprecise criteria to a state court per curiam affirmance is no longer adequate. Before this court can deny the petition on the grounds of state procedural default, there must have been a clear and express statement by the state trial court that its judgment was based upon procedural default.").

Rodriguez must demonstrate no reasonable basis for the state appellate court's summary denial of relief. (Doc. 24-1 at 85.) *Richter*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The jury found Rodriguez guilty of five counts of manslaughter while driving under the influence. (Doc. 24-1 at 6–8.) Manslaughter while driving under the influence is a second-degree felony, punishable by fifteen years of prison. §§ 316.193(3)(c)(3)(a) and 775.082(3)(c), Fla. Stat. (2003). The trial court imposed a life sentence for each conviction. (Doc. 24-1 at 13.) The Sixth Amendment required that the jury find facts that permitted a lawful imposition of a life sentence, instead of the original statutory maximum of fifteen years. Because of how the trial court instructed the jury and the necessary factual findings contained therein, no *Apprendi* violation occurred here. And to the extent that one did, it was harmless.

Under Florida's Criminal Punishment Code, "[t]he permissible range for sentencing shall be the lowest permissible sentence up to and including the statutory maximum, as defined in § 775.082, for the primary offense and any additional offenses before the court for sentencing." § 921.0024(2), Fla. Stat. (2003). "The lowest permissible sentence is the

minimum sentence that may be imposed by the trial court, absent a valid reason for departure." *Id.* To determine the "lowest permissible sentence," the trial court assesses points for each conviction, for injury suffered by a victim, and for the defendant's criminal history, to calculate a "total sentence points." § 921.0024(1)(a), Fla. Stat. (2003). "'Victim injury' is scored for physical injury or death suffered by a person as a direct result of any offense pending before the court for sentencing." Fla. R. Crim. P. 3.704(d)(9). *See* § 921.0021(7)(a), Fla. Stat. (2003). "Victim injury must be scored for each victim physically injured and for each offense resulting in physical injury whether there are one or more victims." Fla. R. Crim. P. 3.704(d)(9). The Criminal Punishment Code permits a trial court to impose a life sentence if the "total sentence points" exceeds 363. *See* § 921.0024(2), Fla. Stat. (2003) ("If the total sentence points are greater than or equal to 363, the court may sentence the offender to life imprisonment.").

At Rodriguez's sentencing, the court calculated a "total sentence points" of 824.8 and a "lowest permissible sentence" of 595.5 months in prison, or 49.8 years. (Doc. 24-4 at 73.) The "total sentence points" included seventy-four points for one of the manslaughter convictions (the "primary offense"), thirty-seven points for each of the remaining four convictions ("additional offenses"), and 120 points for each death that occurred during the

five offenses ("victim injury"), for a total of 822 points. § 921.0024(1)(a), Fla. Stat. (2003).[4]

Because the "total sentence points" in Rodriguez's case exceeded 363, the statute authorized

the life sentences. *See Brown v. State*, 806 So. 2d 576, 577–78 (Fla. 2d DCA 2002).

But because the 600 points for the deaths of the five victims increased the "total

sentence points" above 363 and increased the statutory maximum from fifteen years to life,

§ 921.0024(1)(a), Fla. Stat. (2003), *Apprendi* required that the jury to determine facts to

support that increase in the statutory maximum sentence. *See Gisi v. State*, 848 So. 2d

1278, 1282 (Fla. 2d DCA 2003) ("Where the addition of victim injury points is a factor

which causes a sentence to be increased beyond the statutory maximum, the facts of victim

injury must be submitted to a jury pursuant to *Apprendi*.").

On the verdict form, the jury found Rodriguez guilty of each of the five

manslaughter offenses. (Doc. 24-1 at 6–8.) The verdict form did not contain a special

interrogatory. (Doc. 24-1 at 6–8.) However, the trial court instructed the jury on

manslaughter in a way that required the jury find that Rodriguez "caused or contributed to

the cause of the deaths":

> To prove the crime of DUI manslaughter, the State must prove
> the following elements beyond a reasonable doubt. First, the
> defendant drove a vehicle. Second, while driving the vehicle,
> the defendant was under the influence of alcoholic beverages

---

[4] Although the record is unclear, the 2.8 point disparity likely arises from  prior convictions for minor offenses. § 921.0024(1)(a), Fla. Stat. (2003). *Apprendi* does not apply to a prior conviction that increases the maximum sentence. 530 U.S. at 490.

to the extent that his normal faculties were impaired or [he] had a blood alcohol level of 0.08 or more of alcohol grams per 100-milliliters of blood, or a breath alcohol level of 0.08 or more of alcohol per 120-liters of breath. And, as a result, the defendant caused or contributed to the cause of the deaths of Katelynn Bieber, Stephen Casey, Steven Geiger, Cancus Scheck, or Michael White.

. . .

If you find from the evidence that the defendant had a blood or breath alcohol level of 0.05 or less, you shall presume the defendant was not guilty of being under the influence of alcohol beverages to the extent that his normal faculties were impaired. If you find from the evidence that the defendant had a blood or breath alcohol level in excess of 0.05 but less than 0.08, you may consider that evidence with other competent evidence in determining whether the defendant was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. Or, if you find from the evidence that the defendant had a blood or breath alcohol level of 0.08 or more, that evidence would be sufficient by itself to establish that the defendant was under the influence of alcohol to the extent that his normal faculties were impaired. However, such evidence may be contradicted or rebutted by other evidence demonstrating that the defendant was not under the influence to the extent that his normal faculties were impaired. These presumptions may be considered along with any other evidence presented in deciding whether the defendant was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.

(Doc. 24-3 at 510–13.)

Because the trial court instructed the jury to determine whether "the defendant caused or contributed to the cause of the deaths of [the victims]," (Doc. 24-3 at 511), the jury necessarily determined that the victim's deaths occurred "as a direct result of the [offenses]." [5] § 921.0021(7)(a) (2003). *See Sims v. State*, 998 So. 2d 494, 505 (Fla. 2008) ("This 'direct result' language clearly imparts and includes a causation requirement, which must exist between the death of the victim and the charged offense . . . . Sims was not charged with vehicular homicide or any other offense in which the crime actually involved the impact that caused the death. A conviction under that different circumstance would have satisfied the causation requirement for the imposition of victim-injury points."); *Magaw v. State*, 537 So. 2d 564, 567 (Fla. 1989) ("[T]he [manslaughter while driving under the influence] statute does not say that the operator of the vehicle must be the sole cause of the fatal accident. Moreover, the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the

---

[5] The addition of victim injury points for a conviction for manslaughter while driving under the influence is not "double scoring" under the Criminal Punishment Code. *Scholz v. State*, 734 So. 2d 526, 527 (Fla. 4th DCA 1999) ("Appellant contends that the addition of victim injury points constitutes 'double scoring' because death of a victim is an element of DUI manslaughter. We disagree and affirm appellant's sentence.") (citing *Wendt v. State*, 711 So. 2d 1166 (Fla. 2d DCA 1998); *Martinez v. State*, 692 So. 2d 199 (Fla. 3d DCA 1997)).

part of a driver under the influence to which the fatal accident can be attributed will suffice.").

Rodriguez contends that the jury did not find (1) whether he caused the death of the victims or whether he contributed to the death of the victims, (2) whether he was impaired or whether his blood alcohol content exceeded 0.08 at the time of the accident, and (3) whether victim injury points applied because the deaths were the direct result of the crimes. (Doc. 1 at 24.) However, as explained above, the jury necessarily determined that Rodriguez either caused the death or contributed to the death and that either Rodriguez's normal faculties were impaired or his blood alcohol level or breath alcohol level exceeded the legal limit. (Doc. 24-3 at 510.) Those findings supported the convictions for manslaughter while driving under the influence. § 316.193(1), (3), Fla. Stat. (2003). *Magaw*, 537 So. 2d at 567.

Because the jury found Rodriguez guilty of the offenses and necessarily determined that the victims' deaths directly resulted from the offenses, the jury's verdict supported the imposition of the victim injury points. *Sims*, 998 So. 2d at 505. Because the victim injury points increased the maximum sentence for the offenses from fifteen years to life, the trial court did not violate *Apprendi* by imposing the life sentences, and the state appellate court did not unreasonably deny the claim. *See Blakely v. Washington*, 542 U.S. 296, 303 (2004) ("Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes

is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (italics in original)).

Lastly, unrebutted evidence, including Rodriguez's statements to police and testimony at trial, proved that Rodriguez drove under the influence of alcohol and exceeded the speed limit, (Doc. 24-3 at 144–47, 216, 221), slammed on his breaks when the red Neon suddenly stopped, (Doc. 24-3 at 275), and rear-ended the red Neon, (Doc. 24-3 at 149–52, 275–77). Rodriguez's car crashed into a McDonald's sign, (Doc. 24-3 at 277), and the red Neon crashed into a transformer box and burst into flames, (Docs. 24-2 at 628 and 24-3 at 19). The medical examiner testified that the victims died from internal injuries caused by the crash. (Doc. 24-2 at 548–52.)

Even if the absence of a specific finding by the jury on the verdict form violated *Apprendi*, a rational jury would have determined that the deaths of the victims were a "direct result" of the manslaughter offenses, and a violation of the Sixth Amendment was harmless. § 921.0021(7)(a), Fla. Stat. (2003); *Sims*, 998 So. 2d at 505. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (holding that a non-structural constitutional error is harmless on habeas review if the error did not have a "substantial and injurious effect or influence in determining the jury's verdict" (citation omitted)); *Washington v. Recuenco*, 548 U.S. 212, 222 (2006) ("Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error."); *Plasencia v. Sec'y, Fla. Dep't Corrs.*,

606 F. App'x 511, 515 (11th Cir. 2015) (applying the *Brecht* harmless error standard to a *Blakely* claim raised on federal habeas). Accordingly, Ground Eight warrants no relief.

## I. Ground Nine

Rodriguez asserts that the state trial court violated his federal right against double jeopardy by consecutively imposing the life sentences for the five convictions. (Doc. 1 at 25.) He contends that the trial court unlawfully stacked the victim injury points for the deaths of the five victims and unlawfully stacked the life sentences for the five convictions because the offenses and the deaths occurred during the same criminal episode. (Doc. 1 at 25.)

The Respondent asserts that the claim is unexhausted because Rodriguez failed to fairly present the federal nature of his claim to the state appellate court. (Doc. 21 at 50–52.) Rodriguez presented the double jeopardy claim in his brief on direct appeal and cited *Hale v. State*, 630 So. 2d 521 (Fla. 1993). (Doc. 24-1 at 57–58.) Because *Hale*, 630 So. 2d at 523, reviewed whether a state sentencing statute violated double jeopardy, Rodriguez fairly presented the federal nature of his claim to the state appellate court. The state appellate court's per curiam affirmance is an adjudication on the merits, and Rodriguez must demonstrate no reasonable basis for the summary denial of relief. (Doc. 24-1 at 85); *Richter*, 562 U.S. at 98.

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Section 921.0021(7)(a), Fla. Stat. (2003), defines "victim injury" as "the physical injury or death suffered by a person as a direct result of the primary offense, or any additional offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense." Section 921.0024(1)(a), Fla. Stat. (2003), requires the "total sentence points" to include points for the primary offense, additional offenses, and victim injury. Consequently, the Criminal Punishment Code authorized the stacking of victim injury points for deaths arising from all five of Rodriguez's manslaughter convictions.

Also, *Bautista v. State*, 863 So. 2d 1180, 1187 (Fla. 2003), held that "[a]ny reasonable consideration of the language of the statute, the history of its enactment, the uniform statutory treatment of manslaughter offenses, and the case law in existence makes it clear that the legislative intent is that each death caused in a DUI crash is to be charged and punished as a separate offense." A state court's interpretation of a state statute receives deference in federal court. *Hunter*, 459 U.S. at 368 ("We are bound to accept the Missouri court's construction of that State's statutes.").

Because the Florida legislature intended to permit a separate charge and separate punishment for each death arising from a conviction for manslaughter while driving under the influence offense and intended to permit stacking of victim injury points for each death arising from those separate offenses, Rodriguez's consecutive life sentences do not violate double jeopardy, and the state appellate court did not unreasonably deny the claim. *United States v. Weathers*, 186 F.3d 948, 952 (D.C. Cir. 1999) ("Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute." (citing *Sanabria v. United States*, 437 U.S. 54, 70 n.24 (1978)). Ground Nine warrants no relief.

### J. Ground Ten

Rodriguez asserts that the state trial court violated his Eighth Amendment right against cruel and unusual punishment by imposing the five consecutive life sentences. (Doc. 1 at 26.)

The Respondent asserts that the claim is unexhausted because Rodriguez failed to present the claim to the trial court at sentencing. (Doc. 21 at 58–59.) Rodriguez presented the federal claim in his brief on direct appeal. (Doc. 24-1 at 58–59.) Because the State of

Florida failed to assert that the claim was unpreserved for review on appeal, (Doc. 24-1 at 80–82), this Court presumes that the state appellate court reviewed the merits of the claim. *Bennett*, 863 F.2d at 807. The state appellate court's per curiam affirmance is an adjudication on the merits, and Rodriguez must demonstrate no reasonable basis for the summary denial of relief. (Doc. 24-1 at 85.) *Richter*, 562 U.S. at 98.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996–97 (1991)). "'[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment, and [ ] successful challenges to the proportionality of particular sentences should be exceedingly rare.'" *Ewing*, 538 U.S. at 22 (quoting *Hutto v. Davis*, 454 U.S. 370, 374 (1982)). "[A] reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005) (quoting *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)). *See also Solem v. Helm*, 463 U.S. 277, 292 (1983). "''In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.'"

*Moriarty*, 429 F.3d at 1024 (quoting *United States v. Delacruz-Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005)).

Rodriguez does not cite clearly established law, determined by the United States Supreme Court, that the state appellate court either ruled contrary to or unreasonably applied. *Andrade*, 538 U.S. at 72 ("Through this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years."). As explained above, § 921.0024(2), Fla. Stat. (2003), authorized the life sentences for the convictions because "the total sentence points [were] greater than or equal to 363." The statute further permitted the trial court to impose sentences for the primary offense and additional offenses consecutively. § 921.0024(2), Fla. Stat. (2003) ("The sentencing court may impose such sentences [for the primary offense and any additional offenses] concurrently or consecutively.").[6] The Florida legislature authorized consecutive life sentences for a defendant who commits crimes with aggravating circumstances, such as the loss of life of more than one person.

Because evidence proved that Rodriguez recklessly raced the driver in the Neon on a densely populated city street while under the influence of alcohol and contributed to the

---

[6] *See also* § 921.16(1), Fla. Stat. (2003) ("A defendant convicted of two or more offenses charged in the same indictment, information, or affidavit or in consolidated indictments, informations, or affidavits shall serve the sentences of imprisonment concurrently unless the court directs that two or more of the sentences be served consecutively.").

cause of the death of five young people and because the consecutive life sentences do not exceed the maximum authorized by the statutes, the state court did not unreasonably conclude that the sentences were neither excessive nor cruel. *See Moriarty*, 429 F.3d at 1024; *Rogers v. United States*, 304 F.2d 520, 521 (5th Cir. 1962) ("'Punishment is not cruel and unusual, unless it is so greatly disproportionate to the offence committed as to be completely arbitrary and shocking to the sense of justice.'" (citing *Weems v. United States*, 217 U.S. 349 (1910)). Ground Ten warrants no relief.

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* To obtain a COA, a petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003); 28 U.S.C. § 2253(c)(2). Rodriguez has not made that showing. And because Rodriguez is not entitled to a COA, he is also not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Rodriguez's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Rodriguez and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida on March 24, 2023.

Kathryn Kimball Mizelle
United States District Judge